United States District
Court, Southern District of New York

| | |
|---|---|
| Christopher Ream<br>Plaintiff<br><br>v.<br><br>Berry-Hill Galleries Inc., James<br>Berry Hill, individually, and<br>David Berry Hill<br>Defendants | Case No.<br>1:16 - CV -<br>07462 (VEC) |

Memorandum of Law in Opposition to Plaintiff's motion for Summary Judgement and Cross Motion to Summarily Dismiss Plaintiff's Complaint

I. PRELIMINARY STATEMENT

Plaintiff's claim for an annual salary of $85,000 per year in the period 2010-2015 fails because Plaintiff did not have a written contract subscribed to by the party to be charged in accord with the applicable Statute of Frauds . Further Plaintiff's claims under the Federal Labor Standards Act (" FLSA") for the minimum wage in the above period, also fails with the exception of 2015. Defendants have agreed to pay Plaintiff the differential.

Plaintiff seeks this Court to grant summary judgment in the amount in excess of $440,000. Defendants ask this Court in their cross-motion to dismiss all of Plaintiff's claims, order Plaintiff to accept the differential between what was received in 2015 and the minimum wage and pay Defendants reasonable fees pursuant to the Defendants Federal Rules of Civil Procedure ("FRCP") Rule 68 if the differential offered is not accepted.

II. FACTS

Defendants make reference to the affidavits of Defendant James Hill and the transcript of the deposition on oral questions of Christopher Ream, the Plaintiff, on July 14, 2017 for the facts dispositive of the Motions. The deposition makes it

1

clear from Plaintiff Ream's own mouth that a written contract whereby he was to be paid an $85,000 annual salary did not and never has existed. The absence of merit to the contract claim is that it is not merely not supported by the absence of such a writing, but also by the total evidence of a consistent pattern of varying payments.

A. <u>Plaintiff 's Admissions As To The Absence of a Written Contract And Even An Oral Contract Whereby Plaintiff Was Paid $85,000 Per year.</u>

Plaintiff has no recollection of the dollar number discussed when he was offered employment and he is not remotely definitive at a later point in time. (Tr. Pp 9, 10, 12, 13, 18, 29, 30). It was and is clear by Plaintiff's admission in his deposition testimony that there was not a signed writing subscribed to by the Gallery and/or any of the Defendants that Plaintiff was to paid on an annual basis at the rate of $85,000 per year. (Tr. pp.16, 17-18, 20-21, 28-30, 60-61.) Nor were there any subsequent writings that credibly established Plaintiff's salary to be $85,000 per year. (TR page 66). There was one piece of paper, however; and that totally destroys Plaintiff's credibility.

In October 2008, Plaintiff approached the bookkeeper, Brenda Gobioff, to write a letter (i.e. a "to whom it may concern" letter) Plaintiff's Exhibit 4 that Plaintiff could use as the "personal reference letter" a statement of income for an application for an apartment. The personal reference letter was written by James Hill addressed to the Board of Directors of a condo. A separate "to whom it may concern" letter by Brenda Gobioff that did in fact mention an $85,000 annual salary but with a "guaranteed bonus of $25,000" that is not reflected in any employment or income records while Plaintiff worked at the Gallery. ( See Exhibit E to James Hill's Affidavit and the Appendix herein; and Tr. pp. 37-44). The total absence of a "$25,000 guaranteed bonus" is the best evidence that the Plaintiff was making up the $85,000 number as well.

B. PLAINTFF'S MIMIMUM WAGE CLAIMS

Plaintiff's compensation including from 2001 to 2015 varied. There were only four (4) years (i.e. 2004, 2006, 2009, and 2012) where Plaintiff made $85,000 per year. In addition, there were four (4) years Plaintiff made over $85,000 (i.e. 2002, 2003, 2005 and 2007). In the period in issue (i.e. 2010-2015) Plaintiff made over $50,000 but less than $60,000 in 2011and 2014 where he made $53,125 and $50,350 respectively. He made $28, 333 in 2013. He made $14, 086 in 2010 but missed over six (6) months that year (See Affidavit of James Hill and Tr. page 25 ). In 2015 Plaintiff made $7,000.

Using the minimum wage rate of $7.25 an hour, the sole year where the Plaintiff fell below the minimum wage was 2015 and the short fall was $8,080.

2

This was due to the Gallery's financial difficulties. Pursuant to Federal Rules of Civil Procedure ("FRCP") 68, an Offer is being made to Plaintiff of the differential for the 2015 short fall under the FLSA.

Plaintiff's complaint based on the foregoing numbers should be dismissed with the exception of 2015. The short fall is only $8,080 and Defendant's Berry Hill Galleries has agreed to pay that sum. This and other facts evidence Defendants' good faith.

<u>Point I</u>
**PLAINTIFF'S COMPLAINT WITH RESPECT TO HIS CLAIMS BASED ON AN AGREED SALARY OF $85,000 SHOULD BE DISMISSED WITH PREJUDICE BECAUSE THEY DO NOT MEET THE REQUIREMENTS OF THE STATUTE OF FRAUDS.**

Plaintiff's admissions in his deposition on oral questions coupled with New York General Obligations Law ("GOL") Section 5-701 warrants this Court in summarily dismissing Plaintiff's contract claims that he did not receive an agreed annual salary in the 2010-2015 period of $85,000. Section 5-701 provides in pertinent part:

" (a) <u>Every agreement</u> promise or undertaking <u>is void unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged</u> therewith or by his lawful agent, if said agreement, promise, or undertaking,

1. By its terms is <u>not</u> to be performed within one (1) year from the making thereof or the performance of which is not be completed before the end of a lifetime." (Emphasis added.)

Further, GOL 5-701 3 (c) and (d) states two (2) exceptions:

"(c) The party against whom enforcement is sought admits in its pleading, testimony, or otherwise in court that a contract was made; or
(d) <u>There is a note, memorandum, or other writing sufficient to indicate that a contract has been made, signed by the party against whom enforcement is sought or its authorized agent or broker.</u>" (Emphasis Added.)

Clearly Defendants did not admit as described in 3 (c) above, that there was an agreement to pay an annual salary of $85,000. Moreover, no writing "sufficient to indicate that a contract has been made, signed by the party" has been tendered. The October 2008 "to whom it may concern" letter is nothing more or less than a fabrication to assist Plaintiff in qualifying for an apartment and was transparently

3

false in that it sought to enhance Plaintiff even further than an $85,000 annual salary by indicating a yearly "guaranteed bonus" of $25,000 that was <u>never</u> the case.

See also: <u>Rothstein v Mahne</u> 2015 US Dist. Lexis 151056, 2015 WL 6828061 (SDNY 2015) that allows an oral agreement if there is a subsequent and sufficient document "to indicate that a contract has been made, signed by the party against whom enforcement is sought or by its authorized agent or broker ."
No such documents by or between the company or its agent and the Plaintiff was ever prepared or exists.

Point II
**PLAINTIFF IN THE PERIOD 2010-2015 WITH THE EXCEPTION OF 2015 , WAS PAID THE MINIMUM WAGE.**

As stated, the Plaintiff was paid the minimum wage in the years in issue with the exception of 2015. In respect to 29 USC Section 206 (a)(1) it provides:
"Every employer shall pay to each of his employees who in any work week is employed in and engaged in commerce or in the production of goods for commerce not less than the minimum rate in effect."

Calculations under FLSA and applying the operative minimum wage of $7.25 per hour compensation for 2010, 2011, 2013, 2014 and 2015 shows only a 2015 shortfall. The dollar amount of $15,080 or in the aggregate $91,080 would satisfy the minimum wage. If $144,000 for medical coverage (as Plaintiff made <u>no</u> contribution to the coverage) is added, the aggregate compensation was $235,800 or $39,300 per year; more than double the minimum wage.

In the six (6) years in issue, inclusive of medical coverage, Plaintiff in actuality received an aggregate in compensation of $381,915.19 (i.e. $237,925.19 excluding medical coverage) or $63,652.53 per year. Clearly Ream is owed nothing and in fact was paid in excess of the minimum wage for each of the six (6) years if the calculations are done in the aggregate. On an individual basis 2015 would be a short fall and that would be the case only if the $2,000 monthly medical coverage was not counted.

Further , the year 2010 should not be included in the calculations as Plaintiff was absent at least six (6) months. (Tr. page 25 )

4

Even if each of the years are separately calculated and determined the only minimum wage short fall is in 2015. Defendant James Hill is willing to pay Plaintiff the 2015 short fall of $8,080 in full settlement of the case pursuant to FRCP Rule 68. There can be no further or other liability other than the 2015 short fall." 1]

Point III

**DEFENDANT JAMES HILL AND OTHER INDIVIDUAL DEFENDANTS AS SHAREHOLDERS OF BERRY HILL GALLERIES INC. ARE NOT SUBJECT TO LIABILITY FOR PLAINTIFF'S WAGE CLAIMS AS A MATTER OF LAW.**

As of December 4, 2015, as per a letter from Berry Hill Galleries dated December 14, 2015 to the New York State Department of Health, Christopher Ream was no longer in the employ of Berry Hill Galleries. Assuming Jim Hill and David Hill were members of a group of top ten (10) shareholders in the Berry Hill Galleries corporate entity, Ream did **not** satisfy any of the statutory conditions precedent to establish James Hill's and other shareholders personal liability under BCL 630 (a).

No notice in writing within one hundred and eighty (180) days of the termination of services or employment was given to Defendant James Hill or the other shareholders as Christopher Ream that he intended to charge them personally with putative unpaid wages, i.e. "shall give notice in writing to such shareholder that he intends to hold liable under this section. ..... (i.e. BCL 630)"

David Hill filed for bankruptcy in the Southern District of New York and there is a stay in effect and therefore there should not be a ruling as to him or his company Do Buy LLC. and they cannot be considered in respect to the pending motions.

The federal action was commenced September 23, 2016 against Berry Hill Galleries Inc. and James and David Hill individually. **No** execution of a judgment has been returned unsatisfied. Any action against James Hill and other shareholders, directors and officers is first subject to (1) to dismissal for the lack of timely written notice under BCL 630 and (2) subject to dismissal as premature even if, hypothetically, the notice was in fact given (which it was not) as no execution of a judgment was returned unsatisfied.

5

Further the Declaration of James Hill should be reviewed for the complete analysis of Plaintiff's compensation actually received. It should reviewed not merely for that purpose but because it shows good faith and a pattern of compliance with the FLSA minimum wage requirements

In respect to the personal liability of James Hill and others as officers and directors under Section 198 of the New York Labor Law ("NYLL"), based on the facts and the following language in the relevant statutory provision, they do not have personal liability as a result of their being officers and directors. In pertinent part the language is as follows:

"1-a. On behalf of any employee paid less than the wage to which he or she is entitled under the provisions of this article, the commissioner may bring any legal action necessary, including administrative action, to collect such claim and as part of such legal action, in addition to any other remedies and penalties otherwise available under this article, the commissioner shall assess against the employer the full amount of any such underpayment, and an additional amount as liquidated damages **unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law**.

Liquidated damages shall be calculated by the commissioner as no more than one hundred percent of the total amount of wages found to be due. In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, **unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law**, an additional amount as liquidated damages ….. " (Emphasis Added)

Clearly good faith was and is evident from the facts. This is also re-enforced by the uninterrupted medical coverage and that only in one year, i.e. 2015; the Gallery fell short of the FLSA's minimum wage requirements. However, it the medical coverage is considered there is no short fall.

Based on the facts there is not a shred of bad faith upon the part of James Hill or others. In respect to their liability as shareholders, as outlined above; the statutory preconditions have not been satisfied.

6

Good Faith cannot be disputed. No written agreement signed by either Plaintiff Ream or the Hills exists stipulating that Ream was to receive $85,000 as an annual salary. The variation of compensation from year to year (including compensation in excess of $85,000) during the period 2010 to 2015 shows that without doubt there was **not** a fixed annual salary. Without any contribution from Plaintiff Ream, the Gallery paid $2,000 per month for medical coverage for Ream and his family, even in the 2015 year.

Plaintiff Ream never received less than the minimum wage under the Federal Labor Standards Act ("FLSA") with the exception of 2015 and more often than not, significantly more than the minimum wage. Plaintiff Ream was made aware of the financial circumstances of the Gallery and while his compensation was less in this context than what he ordinarily received; he knew or should have known that James Hill also did not take a salary for the years the Gallery's financial circumstance were strained. (See James Hill Dep. July 13, 2017 Tr. pp. 24-25 )

In any event the Hills personally made sure his family's medical coverage was maintained. All of the foregoing is compelling evidence of good faith and cannot be disputed. Clearly the absence of bad faith and the compelling evidence of good faith insulates James Hill and the other shareholders, officers and directors from personal liability.

Conclusion

Defendants Berry Hill Galleries Inc. and James Berry Hill based on the facts and applicable law cited, seek dismissal of Plaintiff's Complaint with prejudice, and reasonable attorneys' fees less the credit for the 2015 minimum wage short fall that Defendants offer to pay in settlement, and such other appropriate relief as the Court deems just and proper.

Respectfully,

*/s/ Norman B. Arnoff*
Norman B. Arnoff
Attorney For Defendants
60 East 42nd Street
Suite 628
New York, New York 10165
917-912-1165

7

# Appendix

# Berry-Hill

October 30, 2008

To Whom It May Concern:

This letter confirms Christopher Ream's employment at Berry-Hill Galleries, Inc. He has been our Preparator/Art Handler since January 1985. His current base salary (before guaranteed year end bonus of $25,000) is $85,000 per annum. If you need further information, please feel free to contact me.

Sincerely,
BERRY-HILL GALLERIES, Inc.

Brenda Gobioff
Controller

PLAINTIFF'S EXHIBIT

Berry-Hill Galleries, Inc. 11 East 70th Street New York, NY 10021  Telephone 212.744.2300 Fax 744.2838 www.berry-hill.com